IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 10-cv-03104-DME-BNB

GLENN A. WOLLAM, and
BONNIE J. SHOENSTEIN,

Plaintiffs,

v.

WRIGHT MEDICAL GROUP, INC., a Delaware corporation,
WRIGHT MEDICAL TECHNOLOGY, INC., a Delaware corporation,
WRIGHT MEDICAL EUROPE S.A., a foreign corporation,
DANIEL M. WARD, M.D., an individual,
JOHN DOE, an individual, and
JANE DOE, an individual,

Defendants.
_____

**ORDER**
_____

This matter arises on **Plaintiffs' Motion to Compel** [Doc. # 48, filed 4/22/2011] (the "Motion to Compel"). After hearing nearly 45 minutes of argument, I have concluded that further argument on the motion would not assist me in its determination.

The plaintiffs move to compel further responses from defendants Wright Medical Group and Wright Medical Technology (the "Wright defendants") to plaintiffs' Production Requests 1 through 17 and Interrogatories 1 through 5.

**1. The "Cloned" or "Piggybacking" Discovery**

Production Requests 1, 2, 3, and 4 are what are sometimes called "cloned" or "piggybacking" discovery. The name derives from the fact that the plaintiffs are attempting to clone the discovery taken by others in unrelated cases and to piggyback on that unrelated

discovery. For example, in this case the cloned discovery seeks all "documents and things produced," "transcripts of each, any, and all depositions," "all reports by experts by any party," and "all other discovery responses served by any defendant" in the following:

> [A]ny action from January 1, 2001, to the present, in any state or federal court in the United States, or in a foreign court or tribunal, where it was claimed or alleged that an artificial hip designed, manufactured, or distributed by a Wright entity failed in such a way that the component known as the "modular neck" corroded, fretted, or fractured, regardless of whether that exact language was used.

Wright Defendants' Responses to Production Requests [Doc. # 50-1] at pp. 6-13.

The Wright defendants objected to these production requests as overbroad and unduly burdensome and as seeking irrelevant information because they call for the production of materials "regarding components other than those allegedly implanted in Plaintiff, and seek[] information concerning matters unrelated to the facts and issues herein. . . ." Id. The Wright defendants identified one other case pending in a Massachusetts state court "potentially involving a Profemur Neck PHAO-1204," which is the device that was implanted in Mr. Wollam, one of the plaintiffs here, and which is alleged to have failed, but objected to producing that information as confidential, citing Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33 (1984). Id. Apparently no documents were produced in response to Production Requests 1-4.

Rule 26(b)(1), Fed. R. Civ. P., allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." At issue here is whether discovery taken in other, unrelated, and as yet unidentified cases, pending worldwide and over the last decade, is relevant to the claims of these plaintiffs. I

agree with the many courts that have considered the question and have held that cloned discovery is not necessarily relevant and discoverable. See Chen v. AMPCO System Parking, 2009 WL 2496729 **2-3 (S.D. Calif. Aug. 14, 2009)(denying motion to compel production of all discovery taken in state court cases without a sufficient showing of relevance); Moore v. Morgan Stanley & Co., Inc., 2008 WL 4681942 **2, 5 (N.D. Ill. May 30, 2008)(holding that "[a] party's requested discovery must be tied to the particular claims at issue in the case" and that "just because the information was produced in another lawsuit . . . does not mean that it should be produced in this lawsuit"); Oklahoma v. Tyson Foods, Inc., 2006 WL 2862216 **1-2 (N.D. Okla. 2006)(denying motion to compel production of documents made available "in a similar poultry waste pollution lawsuit previously brought in this Court" absent a showing of more than "surface similarities" between the cases); Midwest Gas Services Inc. v. Indiana Gas Co., Inc., 2000 WL 760700 *1 (S.D. Ind. March 7, 2000)(in a private antitrust action, refusing to compel production of documents provided to the United States in response to a civil investigation demand absent a showing of relevance); and Payne v. Howard, 75 F.R.D. 465, 469 (D. D.C. 1977)(stating that "[w]hether pleadings in one suit are 'reasonably calculated' to lead to admissible evidence in another suit is far from clear" and that such a determination requires consideration of "the nature of the claims, the time when the critical events in each case took place, and the precise involvement of the parties, among other considerations").

As the court explained in the Midwest Gas case, a party seeking discovery ordinarily must "do their own work and request the information they seek directly" and "must make proper requests describing the information in which they are interested." Midwest Gas, 2000 WL 760700 at *1. Direct requests allow a court to consider the relevance of the information sought

to the specific claims and defenses in the pending case. A request for all discovery in unidentified actions taken worldwide with the single similarity that those actions involve the alleged failure of an artificial hip (although not necessarily the same model) designed, manufactured, or distributed by a Wright entity does not allow such review. Discovery is intended to be liberal, but it is not unbounded. The sweeping cloned discovery sought by the plaintiffs has not been shown to be sufficiently relevant to the claims and defenses in this case and simply reaches too far.

Although the plaintiffs argue in conclusory terms that "all of the modular necks that are compatible with the Wright Medical Profemur system [are] substantially similar, and that most of these necks have been experiencing fracture failures," Motion to Compel [Doc. # 50] at p. 5, I have not been directed to any evidence confirming even these "surface similarities." See Oklahoma v. Tyson Foods, 2006 WL 2862216 *1(holding that a showing of "some surface similarities" is insufficient to require "*carte blanche*" production of all documents produced in a different case).

It is not clear to me that any showing would be sufficient to justify an order requiring the disclosure of all discovery made or received by the Wright defendants in unknown and unspecified cases involving alleged modular neck failures worldwide over the last decade. To justify cloned discovery in identified cases, however, would require a showing of at least the following: (1) that the allegedly failing devices were substantially similar to the device at issue here; (2) a similarity in the nature of the claims, including similarities in the alleged causes and nature of the failures; and (3) the involvement of the same defendants as are sued here. No such foundation has been established.

The Motion to Compel is DENIED with respect to Production Requests 1, 2, 3, and 4.

## 2.  The USFDA Documents

Production Requests 6, 15, 16, and 17 seek documents and communications between "any Wright entity" and the United States Food and Drug Administration ("USFDA") concerning Wright's modular necks used in its artificial hip systems. Specifically:

Production Request 6 seeks all documents between any Wright entity and the USFDA "where there is any discussion about the component known as the 'modular neck' used in artificial hip systems corroding, fretting, or fracturing . . .";

Production Request 15 seeks all documents "regarding the approval(s)" by the USFDA of "the specific models or designs of Wright artificial hip devices implanted in the plaintiff Glenn Wollam . . .";

Production Request 16 seeks all documents "where a Wright entity self-reported" to the USFDA "any incident of claimed or suspected corroding, fretting, or fracturing of a Wright modular neck . . ."; and

Production Request 17 seeks all documents "where a Wright entity responded to a report initiated by someone other than a Wright entity to the [USFDA] of a claimed or suspected incident of corroding, fretting, or fracturing of a Wright modular neck. . . ." Wright Defendants' Responses to Production Requests [Doc. # 50-1] at pp. 14, 20-21.

The Wright defendants objected to these requests as overbroad and unduly burdensome and because they seek information regarding components other than those allegedly implanted in Mr. Wollam. They indicated, however, that they would produce documents known as 510(k)s insofar as they relate to the devices implanted in Mr. Wollam and would produce the complaint

filed with the USFDA by Mr. Wollam.  Id. at pp. 14, 20-22.

No evidence of the burden imposed in producing responsive documents has been made, and the conclusory assertion by counsel of burden is insufficient.

As noted previously, discovery is limited to that information either relevant to the claims and defenses asserted or reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).  Here, there is no adequate showing, and I am not convinced, that information concerning modular necks used in Wright artificial hip systems, other than the Profemur Neck PHAO-1204 (which is the model implanted in Mr. Wollam) is relevant to the claims asserted or reasonably calculated to lead to the discovery of admissible evidence.  The Wright defendants' objection based on relevance is well-founded with respect to Production Requests 6, 16, and 17 insofar as they call for the production of documents relating to modular necks other than model PHAO-1204 and, to that extent, the Motion to Compel is DENIED.

Production Request 15, by its terms, is limited to "the specific models or designs of Wright artificial hip devices implanted in the Plaintiff Glenn Wollam," and the Motion to Compel is GRANTED with respect to Production Request 15.  In addition, to the extent that Production Requests 6, 16, and 17 call for information concerning the artificial hip devices implanted in Mr. Wollam, they seek discoverable information, and the Motion to Compel is GRANTED to require the production of those materials.

In their response, the Wright defendants argue generally that the Motion to Compel is "both moot and premature."  Response [Doc. # 67] at p. 4.  It is moot, the Wright defendants contend, because after it was filed the Wright defendants produced "all of the relevant, nonprivileged information . . . that is available at this time."  Id. at p. 5.  It is premature because

the plaintiffs failed to "specify and allow Wright Medical to remedy any purported deficiency prior to filing the Motion to Compel." Id. at p. 6. Significantly, the Wright defendants argue that "[t]he Rules [of Civil Procedure] contemplate that discovery will continue and evolve during the pendency of a matter as issues are refined and investigations continue"; that they have produced all responsive information "that is available at this time"; and that they will "continue to investigate the matter and supplement if additional information becomes available." Id. at p. 5 and n. 1.

With respect to the USFDA documents in particular, the Wright defendants state that they produced the 510(k)s, believing that "fully complied with the request," and that it was "not until Plaintiffs' letter of May 1, 2011--twenty-seven days after the initial discovery responses and nine days after the Motion to Compel was filed--that Plaintiffs identified other information they considered to be responsive to the request, including internal communications regarding the approval process." Id. at p. 6. These arguments are unpersuasive.

I am aware of what appears to be a standard of practice developing in connection with the production of documents where, following the permitted 30 day period, a party serves its written response and objections to the production requests and states, as the Wright defendants did here, that responsive documents will be produced at an unspecified time in the future. The practice unreasonably extends and delays the discovery process and does not comply with the requirements of the Federal Rules of Civil Procedure. To the contrary, Rule 26(g), Fed. R. Civ. P., requires in relevant part:

> [E]very discovery request, response, or objection must be signed
> by at least one attorney of record in the attorney's own name. . . .
> By signing, an attorney . . . certifies that to the best of the person's
> knowledge, information, and belief **formed after a reasonable**

>>**inquiry**:
>
> * * *
>
>**(B)**  with respect to a discovery request, response, or objection, it is:
>
>**(I)**  consistent with these rules. . . .

(Emphasis added.)

>Rule 34(b), Fed. R. Civ. P., concerning the production of documents, provides:
>
>>**(b)(2)**  *Responses and Objections*.
>>
>>**(A)** *Time to Respond.*  The party to whom the request is directed must respond in writing within 30 days after being served. . . .
>>
>>**(B)** *Responding to Each Item.*  For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons.
>>
>>**(C)** *Objections.*  An objection to part of a request must specify the part and permit inspection of the rest.
>
>The obligations imposed by Rule 26(g) have been explained as follows:
>
>>Rule 26(g) does not require the signing attorney to certify the truthfulness of the client's factual responses to a discovery request. Rather, the signature certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand.

State Farm Mutual Automobile Ins. Co. v. New Horizon, Inc., 250 F.R.D. 203, 220 (E.D. Pa. 2008).  Similarly, in Fendi Adele S.R.L. v. Filene's Basement, Inc., 2009 WL 855955 *8 (S.D.N.Y. March 24, 2009), the court explained:

>>It should not require reiteration that litigants have an obligation, when discovery is sought from them, to make reasonable efforts to locate responsive documents, including setting up a reasonable procedure to distribute discovery requests to all employees and agents potentially possessing responsive information, and to

8

> account for the collection and subsequent production of the
> information.  It is equally the litigant's responsibility (and that of
> its counsel) to determine beforehand the accuracy of any
> representations that production is complete.

Thus, absent a protective order or other relief from the court, inspection of responsive documents for which no objection is interposed must be permitted promptly after the written response is served.  The documents available for inspection must include all responsive documents, other than those subject to a good faith objection, then found to be in the possession, custody, or control of the responding party after a reasonably thorough search.

The duty to supplement does not relieve the responding party of its obligation, in the first instance, to make the necessary, thorough search and to produce all known discoverable documents within approximately 30 days after service of the request for production.

The Wright defendants' contention that they believed production of the 510(k)s concerning the Profemur Neck PHAO-1204 and Mr. Wollam's complaint to the USFDA satisfied their obligations under the discovery requests is incredible.  To the contrary, Production Request 15 calls for "all documents . . . regarding the approval(s) by the [USFDA]" of the "models or designs of Wright artificial hip devices implanted" in Mr. Wollam.  The request obviously encompasses more than the 510(k)s and Wollam's complaint, including the Wright defendants' "internal communications regarding the approval process," Response [Doc. # 67] at p. 6.  I do not believe that the Wright defendants failed understand the scope of the request to include those documents.  In fact, Rules 26 and 34, Fed. R. Civ. P., require the Wright defendants and their counsel to conduct a thorough search of the Wright defendants' records; to locate all responsive documents in their possession, custody, and control; and to either produce those documents or identify them on an appropriate privilege log.  The Wright defendants failed

9

to satisfy this obligation.

### 3. The Documents Reporting "Failures"

Production Request 5 seeks "all documents and communications" from January 1, 2001, to the present concerning any Wright artificial hip "where it is claimed or discussed" that the hip "may fail, may have failed, or did fail by the component known as the 'modular neck' corroding, fretting, or fracturing. . . ." Wright Defendants' Responses to Production Requests [Doc. # 50-1] at p. 13.

Production Request 7 seeks "all medical literature, papers, podium presentations, poster presentations, research, texts, treatises, or the like . . . received or possessed by Wright from January 1, 2001 to the present, where there is any discussion about the component known as the 'modular neck' of an artificial hip system corroding, fretting, or fracturing. . . ." Id. at p. 14.

Production Request 8 seeks "all documents or correspondence from any Wright entity to any physician, or any health care provider, facility, or third party payor" discussing the "'modular neck' of an artificial hip system corroding, fretting, or fracturing. . . ." Id. at p. 15.

The Wright defendants objected to these requests as calling for "information on components not at issue in this matter," overly broad, unduly burdensome, and as calling for the discovery of irrelevant information. Id. at pp. 13-16. However, the Wright defendants indicated that they would produce the "complaint file related to the instant action" and "search for and make available its non-privileged communications relating to the Plaintiff in this lawsuit and the same components that make up Plaintiff's hip device that allegedly failed in this case, if any." Id.

The hip implanted in Mr. Wollam had several distinct components. The modular neck,

which is a part of the Profemur Neck PHAO-1204, is the particular component that broke. I am concerned, however, by the Wright defendants' statement, repeated several times, that "Wright Medical is aware of no other complaints regarding **all the same components that comprise Plaintiff's hip device which allegedly failed in this case.**" Id. at p. 15 (emphasis added).

I find that documents and information are relevant to the plaintiffs' claims or reasonably calculated to lead to the discovery of admissible evidence, and therefore are discoverable, if they concern the Profemur Neck PHAO-1204. It is not necessary that "**all** the same components" as were implanted in plaintiff Wollam also have been present in another incident.

The Motion to Compel is GRANTED with respect to Production Requests 5, 7, and 8 to require the Wright defendants to produce responsive documents in their possession, custody, or control relating either generally (but not directed to any particular model) to a modular neck of an artificial hip system failing, corroding, fretting, or fracturing, and to all responsive documents addressing the failure, corroding, fretting, or fracturing of the Profemur Neck PHAO-1204.

### 4. The Wollam Specific Documents

Production Request 9 seeks the production of "each draft, and the final published version, of each edition of what is generally known as the 'prescribing information,' 'package insert,' 'IFU,' or the like" for "each of the modular hip components implanted in the plaintiff Glenn Wollam. . . ." Wright Defendants' Responses to Production Requests [Doc. # 50-1] at p. 16.

The Wright defendants object to the production request, stating:

> Wright Medical objects to this Request on the grounds it is overbroad and unduly burdensome, seeks information regarding components other than those allegedly implanted in Plaintiff, and seeks information concerning matters unrelated to the facts and issues herein and, thus, seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Id. Notwithstanding the objections, the Wright defendants indicate that they have "already produced the IFU and Surgical Technique related to the components implanted in the Plaintiff." Id.

The Wright defendants provide no evidence of undue burden, and the boilerplate objection is overruled. The production by its terms is limited to the "modular hip components implanted in the plaintiff Glenn Wollam"; consequently, the objection that it "seeks information regarding components other than those allegedly implanted in Plaintiff, and seeks information concerning matters unrelated to the facts and issues herein," is unfounded and overruled. Although the Wright defendants state that they are producing the "IFU and Surgical Technique related to the components implanted in the Plaintiff," I assume that the objections were interposed for a reason and that not all documents responsive to Production Request 9 have been produced. The Motion to Compel is GRANTED with respect to Production Request 9.

Production Request 14 seeks the production of the following:

> [A]ll documents and information in your possession or control regarding the specific Wright artificial hip devices implanted in the plaintiff Glenn Wollam on April 18, 2005, which is to say any records or documentation of these unique devices from shortly before the date of implant to the present, including but not limited to any documents, reports, or information communicated to Wright at or after the time of implantation by the implanting surgeon, by a Wright representative, or any other source, or any documents,

>> reports, or information communicated to Wright at or after the time
>> of explantation by the explanting surgeon, a Wright representative,
>> or any other source.

Id. at p. 19.

The Wright defendants' unsupported objection based on burden is overruled, as is the objection that the request is compound. Contrary to the Wright defendants' objection, the request is not unlimited in time, and that objection is overruled. The request is limited to the devices implanted and explanted from the plaintiff, and the Wright defendants' objection based on relevance is overruled. The objection that the request is verbose and incoherent is overruled. To the extent the Wright defendants had any question about the nature of the materials sought, the uncertainty could and should have been resolved through a conference pursuant to D.C.COLO.LCivR 7.1A. The Motion to Compel is GRANTED with respect to Production Request 14.

### 5. The Informational Materials

Production Request 10 seeks the "'prescribing information,' 'package insert,' 'IFU,' or the like," for all Wright modular hip systems other than that implanted in Mr. Wollam. Wright Defendants' Responses to Production Requests [Doc. # 50-1] at p. 16. The Wright defendants' objection to the request as seeking irrelevant information is sustained. The Motion to Compel is DENIED with respect to Production Request 10.

Production Requests 11, 12, and 13 seek production of materials concerning each Wright modular hip system available for implantation in April 2005 "intended to provide information about these devices" to "patients, or prospective patients"; "surgeons or other medical professionals"; and "marketing, sales, and 'detail' representatives." Id. at pp. 17-18. Only those

materials concerning the Profemur Neck PHAO-1204 specifically or modular necks generally (but not directed to any particular model) are relevant to the claims in this action and are discoverable; materials specific to other modular neck models are irrelevant. The Motion to Compel is GRANTED with respect to Production Requests 1, 12, and 13 only insofar as they call for materials concerning the Profemur Neck PHAO-1204 specifically or modular necks generally (but not directed to any particular model).

### 6. Interrogatories 1 Through 5

Interrogatory 1 requests the identity of the following

> [E]very court action filed from 1985, to the present, in any state or federal court in the United States, or in a foreign court or tribunal, where it was claimed or alleged that an artificial hip designed, manufactured, or distributed by a Wright entity failed in such a way that the component known as the "modular neck" corroded, fretted, or fractured, regardless of whether that exact language was used.

Wrights' Answers to Interrogatories [Doc. # 50-2] at p. 5.

This interrogatory is connected to the cloned discovery. It is overbroad, and there has been no showing of relevance. The Motion to Compel is GRANTED only with respect to those actions filed on or after January 1, 2001, involving the alleged failure of the Profemur Neck PHAO-1204.

Interrogatory 2 is limited to the "components implanted in the plaintiff Glenn Wollam" and seeks the identity of the designer, manufacturer, importer, distributor, and the composition of the metal alloy of each component. Id. at p. 6. The Wright defendants' answer, referring the plaintiffs to the "Device History Records, which will be produced upon entry of a protective order," is evasive and unresponsive. The Motion to Compel is GRANTED with respect to

Interrogatory 2.

Interrogatory 3 requests the identity of the "person(s) who served as sales, marketing, and/or 'detailing' representatives for Wright Medical hip devices in the Longmont Colorado area from January 1, 2001 to the present, including those persons who would attend surgical procedures if requested to do so." Id. at p. 7. The Wright defendants' objections based on burden, relevance, and vagueness are overruled. Although the Wright defendants provide a partial answer to the interrogatory, I GRANT the Motion to Compel with respect to Interrogatory 3 to require a complete answer.

Interrogatory 4 requests the identity of any Wright representative who did or may have "attended [] any office or hospital visit the plaintiff Glenn Wollam had with any physician or surgeon at any time for any purpose." Id. at p. 7. The interrogatory seeks relevant, discoverable information. The Motion to Compel is GRANTED with respect to Interrogatory 4.

Interrogatory 5 requests the identity of any Wright representative who did or may have "been present [] for any part of plaintiff Glenn Wollam's hip implant surgery on April 18, 2005, at Longmont United Hospital, and his explant surgery at that same facility on November 4, 2008." Id. at p. 8. The interrogatory seeks relevant, discoverable information. The Motion to Compel is GRANTED with respect to Interrogatory 5.

IT IS ORDERED:

1.  The Motion to Compel [Doc. # 48] is GRANTED IN PART and DENIED IN PART as follows:

• DENIED with respect to Production Requests 1-4 and 10;

• GRANTED with respect to Production Request 9, 14, and 15;

• GRANTED with respect to Production Requests 6, 16, and 17 insofar as they call for the production of documents relating to the artificial hip devices implanted in Mr. Wollam, and DENIED in all other respects;

• GRANTED with respect to Production Requests 5, 7, and 8 insofar as they call for the production of materials relating either generally (but not directed to any particular model) to a modular neck of an artificial hip system failing, corroding, fretting, or fracturing, and to all materials concerning the failure, corroding, fretting, or fracturing of the Profemur Neck PHAO-1204, and DENIED in all other respects;

• GRANTED with respect to Production Requests 11, 12, and 13 insofar as they call for the production of materials relating to the Profemur Neck PHAO-1204 specifically or modular necks generally (but not directed to any particular model), and DENIED in all other respects;

• GRANTED with respect to Interrogatory 1 with respect to those actions filed on or after January 1, 2001, involving the alleged failure of the Profemur Neck PHAO-1204, and DENIED in all other respects;

• GRANTED with respect to Interrogatory 2, 3, 4, and 5

2. The Wright defendants shall provide, on or before **May 31, 2011**, supplemental discovery responses in full compliance with the formalities of the Federal Rules of Civil Procedure and produce documents consistent with the requirements of this order; and

3. The parties' requests for attorneys fees are denied in view of the fact that I granted and denied the Motion to Compel in approximately equal measure, and the award of attorneys fees under those circumstances would be unjust.

Dated May 18, 2011.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge